ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA      :    INDICTMENT

    - v. -                     :    S2 13 Cr. 923(RPP)

LARRY DAVIS and               :
DCM ERECTORS, INC.,
                            :

        Defendants.
                            :
- - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-8-14

**COUNT ONE**

**(Wire Fraud)**

The Grand Jury charges:

Background

1.   The World Trade Center Site is comprised of sixteen acres in lower Manhattan bordered by West Street on the west, Church Street on the east, Vesey Street on the north, and Liberty Street on the south.  The World Trade Center Site, currently under construction, consists of four skyscrapers, including One World Trade Center ("One WTC") (previously called "The Freedom Tower"), the World Trade Center Port Authority Trans-Hudson (PATH) Transportation Hub Project (the "WTC Hub") and the 9/11 Memorial Plaza and Museum.

2.   In or about 2006, the Port Authority of New York and New Jersey (the "Port Authority") began construction on One WTC.  One WTC will be a 104-story skyscraper with 69 floors designated as office space, a three-floor observation deck, and below-ground retail space.

One WTC is an approximately $3.8 billion project financed primarily by the Port Authority.

3. In or about 2005, the Port Authority began construction on the WTC Hub. The 800,000 square-foot WTC Hub, currently under construction, will include a multi-story central transit hall, enhanced PATH facilities and services, retail facilities, and an integrated network of underground pedestrian connections to New York City Transit subway stations and the Fulton Street Transit Center. The United States Department of Transportation has committed approximately $2.2 billion toward the more than $3.2 billion project, with the Port Authority funding the remainder.

### DCM's Contracts for the World Trade Center Site

4. DCM Erectors, Inc. ("DCM") is a trade contractor that specializes in steel erection for large construction projects. Since at least in or about March 1999, LARRY DAVIS, the defendant, has owned DCM through Canadian holding companies that he and his wife own and served as its President and Chief Executive Officer.

5. In or about 2007, DCM was awarded an approximately $256 million trade contract for work to be performed on One WTC. In or about 2009, DCM was awarded an approximately $330 million trade contract for work to be performed on the WTC Hub. The work to be performed by DCM on One WTC and the WTC Hub (collectively, the "World Trade Center Project") pursuant to DCM's contracts with the Port Authority included,

2

but was not limited to, drafting and engineering, surveying, structural steel supply and erection, and supply and installation of metal decking.

## The Port Authority's M/WBE Program

6. In or about 1988, the Port Authority Board of Commissioners issued regulations in connection with a program to increase the participation of minority-owned businesses ("MBEs") and woman-owned businesses ("WBEs") (collectively, "M/WBEs") on Port Authority projects (the "M/WBE Program"). Pursuant to those regulations, recipients of Port Authority construction contracts are required to make good faith efforts to achieve the goal of 12 percent MBEs and five percent WBEs participation in Port Authority construction contracts.

7. To become a Port Authority certified M/WBE, a company must, among other things, be owned and controlled by a minority or a woman who owns at least 51 percent of the company. Additionally, the company must be an independent business, meaning a company whose viability does not depend on its relationship with another firm or firms. Accordingly, the company must employ its own work force, own equipment necessary to perform its work, and be able to meet its financial obligations.

8. Pursuant to the M/WBE Program, construction managers and trade contractors are permitted to count toward the attainment of their M/WBE percentage goals only funds paid to M/WBEs that perform

a "commercially useful function" in the execution of a contract. Under the relevant rules and regulations of the M/WBE Program, a M/WBE subcontractor performs a commercially useful function only where it: (i) is responsible for the execution of the work of the contract; (ii) carries out its responsibilities by actually performing, managing, and supervising the work involved; and (iii) furnishes the supervision, labor, and equipment necessary to perform its work. The M/WBE Program rules also expressly provide that a M/WBE does not perform a commercially useful function "if its role is limited to that of an extra participant in a transaction, contract, or project through which funds are passed in order to obtain the appearance of M/WBE participation."

## The M/WBE Fraud Scheme

*The MBE Fraud*

9. Solera Construction, Inc. ("Solera") is a wholly-owned minority company that specializes in metal decking on large construction projects. In or about September 1999, Solera was certified by the Port Authority as a MBE.

10. In or about January 2001, LARRY DAVIS, the defendant, created a joint venture between Solera and DCM, which was named Solera/DCM Joint Venture LLC ("Solera/DCM"). Solera/DCM is owned sixty percent by Solera and forty percent by DCM.

11. In or about July 2010, Solera/DCM was approved by the Port Authority as eligible for MBE credit for One WTC and the WTC Hub

4

both prospectively and retroactively.

12. From in or about 2007 through in or about June 2012, DCM fraudulently claimed MBE credit for One WTC and the WTC Hub in excess of $70 million based on the value of work Solera/DCM purportedly performed for the World Trade Center Project as set forth below:

   a. DCM represented to the Port Authority that Solera/DCM performed metal decking work that, in truth and in fact, was performed by a non-minority contractor ("Subcontractor-1"). To facilitate this fraudulent misrepresentation, at the direction of LARRY DAVIS, the defendant, workers supervised by Subcontractor-1 were placed on Solera/DCM's payroll to make it appear as if Solera/DCM was performing the metal decking work when it was not doing so.

   b. DCM represented to the Port Authority that Solera/DCM performed steel procurement work when, in truth and in fact, DCM procured the steel. To facilitate this fraudulent misrepresentation, at the direction of DAVIS, the owner of Solera signed purchase orders that stated that Solera/DCM had procured the steel when it had not done so.

*The WBE Fraud Scheme*

13. GLS Enterprises, Inc. ("GLS") was incorporated in or about February 2001 and is wholly owned by a woman who serves as its Chairman and Chief Executive Officer (the "GLS CEO"). Prior to and after incorporating GLS, the GLS CEO worked for DCM and managed its

5

payroll.

14.  In or about November 2005, GLS was certified by the Port Authority as a WBE.

15.  Beginning in or about 2007 through in or about September 2012, DCM fraudulently claimed WBE credit for $6.3 million of surveying and payroll management work GLS purportedly was performing as a subcontractor to DCM on One WTC and the WTC Hub as set forth below:

   a.  DCM represented to the Port Authority that GLS performed surveying work that, in truth and in fact, was performed by DCM.  To facilitate this fraudulent misrepresentation, among other things and at the direction of LARRY DAVIS, the defendant, DCM surveyors were placed on GLS's payroll and GLS invoiced DCM for such payroll expenses.

   b.  Although supposedly an independent business, GLS did not operate as such and its viability depended on DCM:  DCM and its related companies were the only clients of GLS and DAVIS controlled GLS by, among other things, approving and paying its major expenses and requiring the GLS CEO to report to DAVIS.

## Statutory Allegations

16.  From in or about 2008 through in or about September 2012, in the Southern District of New York and elsewhere, LARRY DAVIS and DCM ERECTORS, INC., the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and

6

for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, DAVIS and DCM engaged in a scheme to commit M/WBE fraud in connection with the World Trade Center Project and in furtherance of such scheme facsimiles and wire transfers were caused to be sent, including, but not limited to, fraudulent invoices, e-mails related to fraudulent invoices, and payments of money.

(Title 18, United States Code, Section 1343.)

## COUNT TWO

### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

17. From in or about 2008 through in or about September 2012, LARRY DAVIS and DCM ERECTORS, INC., the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

18. It was a part and object of the conspiracy that LARRY DAVIS and DCM ERECTORS, INC., the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and

7

property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Overt Acts

19. In furtherance of the conspiracy and to effect its illegal object, LARRY DAVIS and DCM ERECTORS, INC., the defendants, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. From in or about 2008 through in or about 2012, DAVIS and DCM caused materially false payroll records that were prepared and/or sent via email and facsimile to be submitted to the Port Authority.

    b. On or about March 20, 2012, DAVIS and DCM caused the Port Authority to wire approximately $403,756.77 from a Port Authority bank account to a DCM bank account using interstate and foreign wires and electronic communication, including wire transfers

and electronic communications that traveled through the States of New Jersey, Delaware, and New York and the United Kingdom.

(Title 18, United States Code, Section 1349.)

_____          _____
FOREPERSON                         PREET BHARARA
                                   United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

LARRY DAVIS and DCM ERECTORS, INC.,

Defendants.

**INDICTMENT**

S2 13 Cr. 923 (RPP)

(18 U.S.C. §§ 1343 and 1349.)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

Foreperson.

10/8/14 - Filed Superseding Indictment
  Judy Francis
  USMJ